## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANA

| | |
|---|---|
| **VICTORIA MARTINEZ**, on behalf of herself and all others similarly situated | |
|     Plaintiff, | Case No. _____ |
| v. | |
| **CONCHETTA, INC.** d/b/a Club Risqué Philadelphia; **TACONY 2008, INC**. d/b/a Club Risqué Northeast; **RT 413, INC**. d/b/a Club Risqué Bristol; **CONNIE INNEZZELLI; ROBERT CRUDELE; DEAN PAGANO; THEODORE PAGANO Sr.;** and **THEODORE PAGANO Jr.** | CLASS AND COLLECTIVE ACTION COMPLAINT |
| | JURY TRIAL DEMANDED |
|     Defendants. | |

## COMPLAINT

NOW COMES Plaintiff, Victoria Martinez, by and through her attorney, David M. Manes, Esq., of Ruppert Manes Narahari LLC, and respectfully submits this Class Action Complaint on behalf of herself and all those similarly situated, averring as follows:

### I. Nature of the Action

1.      Plaintiff brings this Class Action Complaint on behalf of herself and all others similarly situated to recover for damages under the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 203 *et seq*, and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 42 P.S. § 333.102 *et seq*. Plaintiff alleges that Defendants improperly classified her and other employees as independent contractors, despite the fact that they were bona fide employees under the professional control of Defendants and thus entitled to receive proper wage payments under federal law. As a result, Plaintiff and the collective Class Members were: (i)

deprived of the mandated minimum wage for all hours worked; (ii) deprived of overtime wages for all hours worked in excess of 40 per workweek; (iii) and forced to improperly share a percentage of their gratuities with Defendant and other employees of Defendant.

## II. Jurisdiction and Venue

2.     This action arises under the FLSA This court has subject matter jurisdiction under Plaintiff's claims under 28 U.S.C §1331 and 29 U.S.C. § 201 *et seq.*

3.     This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby; (i) the proposed Rule 23 class consist of over 100 or more members; (ii) required diversity exists between the parties; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

4.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(ii) because Defendants operate as employers pursuant to the laws of the Commonwealth of Pennsylvania, and nearly all of the events giving rise to this Complaint took place in the Eastern District of the Commonwealth.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

## III. Parties

7.     Plaintiff, Victoria Martinez ("Martinez"), is an individual Georgia citizen with an address of 31 Wysteria Drive, Richmond Hill, GA 31324.

8.      Defendant, Conchetta, Inc. d/b/a Club Risqué Philadelphia ("Club Risqué Philadelphia"), is a Pennsylvania business corporation with a regular place of business located at 1700 Christopher Columbus Boulevard, Philadelphia, PA 19148.

9.      Defendant, Tacony 2008, Inc. d/b/a Club Risqué Northeast ("Club Risqué Northeast"), is a Pennsylvania business corporation with a regular place of business located at 55921 Tacony Street, Philadelphia, PA 19135.

10.     Defendant, RT 413, Inc. d/b/a Club Risqué Bristol ("Club Risqué Bristol"), is a Pennsylvania business corporation with a regular place of business located at 3025 Veteran's Highway, Bristol, PA 19007.

11.     Defendant, Connie Innezzelli ("Innezzelli"), is the listed President of Club Risqué Philadelphia. She is believed to be a resident of the Commonwealth of Pennsylvania and to operate with a business address of 1700 Christopher Columbus Boulevard, Philadelphia, PA 19148.

12.     Defendant, Robert Crudele ("Crudele"), is the listed President of Club Risqué Northeast. He is believed to be a resident of the Commonwealth of Pennsylvania and to operate with a business address of 55921 Tacony Street, Philadelphia, PA 19135.

13.     Defendant, Dean Pagano ("D. Pagano"), is the listed President of Club Risqué Bristol. He is believed to be a resident of the Commonwealth of Pennsylvania and to operate with a business address of 3025 Veteran's Highway, Bristol, PA 19007.

14.     Defendant, Theodore Pagano Sr. ("T. Pagano Sr."), upon information or belief, is the owner of the Club Risqué franchise. He is believed to be a resident of the Commonwealth of Pennsylvania and to operate with a business address of 1700 Christopher Columbus Boulevard, Philadelphia, PA 19148.

15.     Defendant, Theodore Pagano Jr. ("T. Pagano Jr."), upon information or belief, is an employee of the Club Risqué franchise. He is believed to be a resident of the Commonwealth of Pennsylvania and to operate with a business address of 1700 Christopher Columbus Boulevard, Philadelphia, PA 19148.

## IV. Facts

16.     Martinez and the Class Members are or previously were employed as exotic dancers at Club Risqué Philadelphia, Club Risqué Northeast, or Club Risqué Bristol. Several members of the class worked at more than one of the Club Risqué locations and thus for multiple Defendants; at all relevant times, the Defendants acted interchangeably, in concert, and as joint employers of the class members.

17.     Martinez primarily worked at Club Risqué Bristol. She often worked seven days per week, in excess of forty hours per week.

18.     Although the Club Risqué locations are independently owned by separate legal corporations, the clubs are operated collectively by Defendants under uniform policies which are applicable to all Class Members. Through these policies and procedures, Defendants maintain employment supervision and control over Martinez and all Class Members (collectively "employees").

19.     Defendants have the ability to hire, schedule, and terminate the employment of the Class Members. Defendants also govern the rules and conditions of their employment at all three of the clubs.

20.     Each employee, in order to be scheduled to work, is required by Defendants to provide a schedule one month in advance.

21.     All of Defendants' employees are further required to work at least two weekends, meaning Fridays and Saturdays, per month. Additionally, employees are required to work two Mondays or Tuesdays per month. Mondays and Tuesdays are typically low in club attendance and generate less profit and tips for Defendants and the Class Members.

22.     Defendants mandate that all employees work at least six days per month.

23.     Available shift times are limited to:

   a.   The day shift: 11:00 a.m. until 5:00 p.m.;

   b.   The night shift: 5:00 p.m. until 10:00 p.m.;

   c.   The evening shift: 9:00 p.m. until 2:00 a.m.; and

   d.   The double shift: 5:00 p.m. until 2:00 a.m.

24.     In submitting a schedule, each employee is approved by Defendants only if the proposed schedule reflects six full days per month.

25.     Defendants' scheduling policy also requires that all employees work a full and complete shift when scheduled.

26.     Each employee is required to check in upon arrival for a shift, and the club managers keep track of the employees' respective schedules and promptness.

27.     Defendants have the ability to terminate an employee. In cases of termination, the employee is prevented from performing at any of the Club Risqué locations.

28.     Offenses resulting in termination include tardiness or missed shifts; however, Defendants also maintain at-will employment with employees. Each employee may be terminated for any reason by Defendants.

29.     Martinez and all other Class Members were also prevented by Defendants from performing for or working with any other exotic clubs.

30.     Employees of the clubs are required to meet dress requirements established by Defendants. For example, employees are permitted by Defendants to wear bikinis during the day. After 7:00 p.m., all employees are required to wear a dress or a skirt, according to Defendants' dress code.

31.     Defendants permit employees to wear their hair up during a day shift. After 7:00 p.m., all employees are required to wear their hair down, according to Defendants' dress code.

32.     Defendants also require that all employees wear high-heeled shoes at all times while working.

33.     Employees are required to pay for a uniform selected by Defendants. A club-based "House Mom" makes the uniforms available to employees and charges them per shift. All outfits and shoes worn by employees must be chosen from a uniform that that is pre-selected by Defendants.

34.     Defendants do not reimburse employees for the cost and use of the uniform.

35.     Defendants retain control over and assigned the stages in which an employee performs upon during a given shift. Defendants also retain control over stage rotation. Each employee is required to follow stage assignments. Employees are not free to change stages, nor are they free to refuse to perform or leave the club during a shift.

36.     Employees are required by Defendants to enter the main stage of the respective clubs from a designated staircase at all times. Employees are prohibited by Defendants from entering the stage from the main floor.

37.     Defendants require all employees to appear topless during the second song of their dance set. This rule applies to all employees and their respective sets.

38.     At the conclusion of a set on the main stage, Defendants require all employees to remain on the stage until the next employee is available. This mandate is a result of a club-wide policy instituted by Defendants requiring that there always be an employee on the main stage.

39.     Employees are not permitted to leave the respective clubs before the end of a scheduled shift, unless authorized by a member of Defendants' management staff.

40.     Defendants issue warnings to employees if they engage in behavior that his contrary to the established policy. For example, an employee may be written up for leaving the stage without a replacement employee, attending a shift or assigned set late, chewing gum while on stage, using a cell phone during a shift, or leaving the club early without approval from a member of Defendants' management staff.

41.     Despite the employment control that Defendants exercise over Martinez and all Class Members, employees of Defendants are classified as independent contractors.

42.     As such, Defendants fail to pay the employees mandatory minimum wages and overtime payments. The employees are not compensated at hourly rates. Instead, Defendants require the employees to provide "house fees" for each shift.

43.     A "house fee" is $35.00 per shift. Thus, each employee must pay Defendants $35.00 for every shift that the employee works. This rate is mandated regardless of the time of the shift or the amount of tip money generated by the employee during the shift.

44.     When working a double shift, employees are required by Defendants to pay $70.00.

45.     Often, if an employee does not make enough money to pay Defendants by the end of a shift, the employee is forced to request to borrow money from other members of the staff.

46.     Defendants additionally retain a portion of the tips earned by employees.

47.     Defendants control the amount of money that employees may charge for additional and personal services taking place at the respective clubs. For example, employees are prohibited by Defendants from setting their own rates of personalized dances with the club's patrons.

48.     Defendants also retain a portion of the fees collected for such services. Patrons are not notified by Defendants that a portion of the service charges are retained by the clubs. Thus, those ordering personalized services are misled into believing that the employee is being effectively tipped when, in fact, a portion of both the fee and tip are retained by Defendants. Employees are further prevented by Defendants from discussing compensation with Patrons.

49.     Defendants retain a thirty-five percent commission for every "lap dance" or other personalized service performed by an employee.

50.     Defendants also require employees to engage in mandatory tip-outs, which mandate that employees provide tips to members of Defendants' staff who do not provide customer service. This amount is evaluated on a shift-basis. Employees working a double shift are required to double the price of their mandatory tip-out.

51.     For example, the "House Mom" and DJ must receive a $10.00 tip-out each per shift. The club bounce must receive a $5.00 tip-out per shift.

52.     With the additional house fee, each employee is required to pay approximately $80.00 per shift and $160.00 per double shift.

53.     Martinez has not signed any agreement that would limit her ability to pursue this action or require her to submit to private arbitration; furthermore, to the extent that any employees have signed an agreement purporting to limit their ability to participate in this action, such an agreement is unenforceable.

## CLASS & COLLECTIVE ACTION ALEGATIONS

54.     Martinez brings forth this action on behalf of all employees as a collective action pursuant to the FLSA.

55.     Martinez also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Pennsylvania Class for claims arising under Pennsylvania Law.

56.     The claims under the FLSA may be pursued by members who opt-in to this case pursuant the 29 U.S.C. § 216(b).

57.     Claims brought forth pursuant to Pennsylvania law may be pursued by all those similarly situated who do not opt out of the Pennsylvania-based Class pursuant to Fed. R. Civ. P. 23.

58.     Upon information and belief, the members the Class are so numerous that joinder of all members is not practicable. The exact number of members to these Classes is unknown to Martinez. The number of members will be established through the discovery phase. Martinez believes there are over 100 individuals in the Class.

59.     Martinez's claims are typical claims of the Class that she seeks to represent.

60.     Martinez and Class Members work or have worked for Defendants and were subject to the same compensation policies and procedures, including not being compensated for all hours worked.

61.     Questions of law and fact that are common to the Class that dominate over questions only affective individuals include but are not limited to the following:

   a.  Whether Martinez and employees of Defendants were improperly classified as independent contractors by Defendants;

b.   Whether Defendants have failed to pay the mandated minimum wages for each hour worked;

c.   Whether Martinez and employees of Defendants were required to pay fees for each shift worked**;**

d.   Whether Defendants retained any portion of Martinez and employees' tips;

e.   Whether Defendants failed to pay overtime compensation for all hours worked in excess of forty hours per week;

f.   Whether Martinez and employees are entitled to compensatory damages, and if so, the channels of measuring such damages;

g.   Whether Martinez and employees are entitled to restitution for claims brought forth; and

h.   Whether Defendants are liable for Martinez and employees' fees associated with legal representation and costs.

62.   Martinez contends that she will fairly and adequately protect interests of the Class as her interests are in alignment with those members.

63.   Martinez has no interests that are adverse than the Class that she seeks to represent and has retained counsel.

64.   Martinez and the Class that she seeks to help represent have suffered and continue to suffer damages from Defendants' customs, policies, and practices.

65.   Defendants have knowingly engaged in violation and continued violation of the FLSA and PMWA.

## COUNT I
### Violations of the Fair Labor Standards Act of 1938
*(Brought by Plaintiff Individually and on Behalf of the Collective Class)*

66.     Martinez, individually and on behalf of the Collective Class Members, incorporates the preceding paragraphs herein as though set forth at length.

67.     Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee […] or anyone acting in the capacity of officer or agent" for the organization. 29 U.S.C.A. § 203.

68.     At all relevant points, Defendants had gross annual revenue in excess of $500,000.

69.     At all relevant points, Defendants have been and continue to be an employer engaging in interstate commerce within the meaning of the FLSA in the Commonwealth of Pennsylvania.

70.     At all relevant times, Defendants have employed or continue to employ Martinez and the collective Class Members within the meaning of the FLSA.

71.     Under federal and Pennsylvania law, employers must compensate employees at a minimum wage of $7.25 per hour worked.

72.     Employers facilitating a tip-based structure "must ensure that their tipped employees are paid the Pennsylvania minimum wage." Sicklesmith v. Hershey Ent. & Resorts Co., 440 F. Supp. 3d 391, 396–97 (M.D. Pa. 2020); 29 U.S.C. § 203(m).

73.     In doing so, under both federal and Pennsylvania law, employers may utilize a "tip credit" to reflect "the difference between the Pennsylvania minimum wage of $7.25 per hour and the Pennsylvania hourly tipped minimum wage of $2.83 per hour." Id.

74.     As such, employers may compensate tipped employees at a rate of $2.83 per hour so long as the employees' hourly tips average at $4.42 per hour. Id. Where an employee receives insufficient tips to meet the minimum threshold, "the employer is required to pay the difference."

75.     Here, Defendants fail to compensate Martinez and the Collective Class Members at any hourly rate. Rather, Defendants require that employees pay a "house fee" and to share their earned tips with non-tip workers.

76.     Defendants utilize a compensation policy that improperly classified Martinez and other employees as independent contractors in an effort by Defendants to avoid paying their employees in compliance with the federally mandated minimum wage.

77.     Defendants further engaged in a regular practice of improperly deducting from employees' tips.

78.     Defendants further failed to pay time-and-a-half overtime to Collective Class Members, as required by the FLSA.

79.     The foregoing violations of the FLSA were done willfully by Defendants.

80.     Due to Defendants' aforementioned FLSA violations, Martinez, individually and on behalf of the Collective Class Members, is entitled to recover compensation for unpaid wages, unpaid overtime, improperly withheld tips, liquidated damages, attorneys' fees, and costs of this action pursuant.

### COUNT II
**Violations of the Pennsylvania Minimum Wage Act of 1968**
*(Brought by Plaintiff Individually and on Behalf of the Pennsylvania Class)*

81.     Martinez, individually and on behalf of the Pennsylvania Class Members, incorporates the preceding paragraphs herein as though set forth at length.

82.     Under the PMWA, an employer is any entity "employing any person in this Commonwealth." Pa.Stat.Ann.tit 43 § 260.2a. As such, Defendants acted as employers of Martinez and the Pennsylvania Class Members.

83.     At all relevant points, Defendants had gross annual revenue in excess of $500,000.

84.     At all relevant points, Defendants have been and continue to be an employer engaging in interstate commerce within the meaning of the PMWA in the Commonwealth of Pennsylvania.

85.     At all relevant times, Defendants have employed or continue to employ Martinez and the Pennsylvania Class Members within the meaning of the PMWA.

86.     Under federal and Pennsylvania law, employers must compensate employees at a minimum wage of $7.25 per hour worked. 42 P.S. § 333.102 *et seq.*

87.     Employers facilitating a tip-based structure "must ensure that their tipped employees are paid the Pennsylvania minimum wage." <u>Sicklesmith v. Hershey Ent. & Resorts Co.</u>, 440 F. Supp. 3d 391, 396–97 (M.D. Pa. 2020); 29 U.S.C. § 203(m).

88.     In doing so, under both federal and Pennsylvania law, employers may utilize a "tip credit" to reflect "the difference between the Pennsylvania minimum wage of $7.25 per hour and the Pennsylvania hourly tipped minimum wage of $2.83 per hour." <u>Id.</u>

89.     As such, employers may compensate tipped employees at a rate of $2.83 per hour so long as the employees' hourly tips average at $4.42 per hour. <u>Id.</u> Where an employee receives insufficient tips to meet the minimum threshold, "the employer is required to pay the difference."

90.     Here, Defendants fail to compensate Martinez and the Pennsylvania Class Members at any hourly rate. Rather, Defendants require that employees pay a "house fee" and to share their earned tips with non-tip workers.

91.     Defendants utilize a compensation policy that improperly classifies Martinez and other employees as independent contractors in an effort by Defendants to avoid paying their employees in compliance with the mandated minimum wage.

92.     Defendants further failed to pay overtime pay to the Pennsylvania Class Members as required by the PMWA.

93.     Defendants further improperly withheld tip amounts from the Pennsylvania Class Members in violation of the PMWA.

94.     The foregoing conduct by Defendants, as alleged, constitutes willful violations of the PMWA.

95.     Due to Defendants' aforementioned PMWA violations, Martinez, individually and on behalf of the Pennsylvania Class Members, is entitled to recover compensation for unpaid wages, unpaid overtime, improperly withheld tips, liquidated damages, attorneys' fees, and costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Martinez, individually and on behalf of the collective Class Members similarly situated, request the following:

a.  Designation of this action as a collective action on behalf of the Collective Class Members and the issuance of a notice pursuant to 29 U.S.C. § 216(b) to inform them of the action and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue;

b.  Designation of this action as a class action under F.R.C.P. 23 on behalf of the Pennsylvania Class;

c.  Entry of a declaratory judgement that the practices contained herein are unlawful under the FLSA and PMWA;

d.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in cohorts with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and procedures set forth herein;

e.  An award of unpaid minimum wages to the Martinez and Class Members;

f.  An award of unpaid overtime wages to Martinez and Class Members;

g.  Restitution of wages and gratuities improperly forfeited to Defendants;

h.  An award of liquidated damages to Martinez and Class Members;

i.  An award of costs and expenses of this action together with attorney's fees to Martinez and Class Members; and

j.  Any other relief as this Court deems just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Martinez demands a trial by jury on behalf of herself and the collective Class Members regarding all questions of fact raised by this Complaint.


Respectfully Submitted,


David M. Manes, Esq.
PA ID: 314661

**RUPPERT MANES NARAHARI LLC**

600 Grant St., Suite 4875
Pittsburgh, PA 15219
(412) 626-5570 Direct
(412) 650-4845 Fax
DM@RMN-Law.com

**VERIFICATION**

I, Victoria Martinez, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.


Dated: __01/19/2021_____                    _____
                                             Victoria Martinez